Our second case for this morning is United States v. Gary France and others. So I think we may have Mr. Duc Duong first. Is that somewhere close to how you pronounce your name? Good morning, Your Honor. May they please the court. My name is Kenneth Duc Duong. I represent Dr. Gary France. This case comes before this court on the visceral court order granting a motion by the government to garnish 100% of my client's disability payment directly from the insurance company. The facts of the case, Your Honor, are undisputed. Dr. France is a licensed dentist in Illinois. In 1984, he incorporated his business, his dental practice at France Dental Center. In 1990, through his business, he obtained a policy, disability policy, that protects his income in case of disability. So here's my central question for you. We have Section 3613, and it lays out the exemptions to collectibility for this kind of, for the forfeiture. It's a shorter list, as the government points out, than the corresponding list in the tax law 6334. The crux of your argument is that when we look at the word earnings, we should take a functional approach and also understand earnings to mean other payments that are a substitute for earnings, that aren't actually earnings themselves, but that are a substitute, because that's what the AXA payments are. His corporation bought this policy so that he would have a substitute for earnings should he become disabled. And what I need to think about, at least, is whether under this statute, substitutes for earnings automatically get the same treatment as earnings themselves. The criminal, the criminal provision, 3613A1, which is the provision that the government relies on- Yeah, that's what I'm talking about. Exemptions. Under Subchapter 3613A3, it should be provided exemption to the limitation of the Consumer Credit Protection Act. And my client, this policy was specifically obtained based on his income in 1990. No, I understand that. It's a substitute for earnings should he become disabled. And unfortunately, he did become disabled. But reading 3613, it's actually quite specific about what property is exempt from levy. And it incorporates, by reference, a number of the subsections of 6334. Interestingly, as the government points out, it does not incorporate workers' compensation. It does not incorporate military service disability payments. And it doesn't incorporate Social Security, supplemental security income. So that's why I say the essence of my question is whether substitutes for earnings get the same treatment as actual earnings. We all agree if this had been actual earnings, the CCPA would have applied. You'd have the 25% and then the other 75% exempt. But I see this as a question of statutory interpretation. The logic of the government argument is that Section 36A1 is exclusive. In this court, in United v. Lee, that discuss retirement, payments from a retirement account. And in Lee, this court rules that payment, monthly payments pursuing the retirement accounts are earnings under the Credit Consumer Act. And Lee also cited to another case, United v. Duque, which is the fifth circuit court case. And in United v. Duque, which is basically the same thing. We have a retirement account, a pension plan, a state pension plan, where payment was made to the deputy criminal defendant. And in that case, the court held that the payment pursuing to the plan is actually earnings. And ASCAP followed that as well and argued that. These are the subject of wages. The government may not be honest. 100% of my client disability payment under Section 36A1-3. Well, so earnings is 3613A3. A1, well, disability income is treated elsewhere. And I guess if your argument depends on an interpretation of 3613A1 that means that it's not exclusive, I'm not sure how one reads the statute that way. It says a judgment imposing a fine may be enforced against all property rights to property of the person fined except that one. And there's actually a few other exceptions. But there are two approaches that this court can decide. One is if 3613A1 is the exclusive list, then that's it. Any payment pursuant to a plan, a retirement plan, which is not also included in the 36A1, must be covered under 6334. However, there must be a junction end where 3613A3. If the court decided the payment is exclusive to the wages, then I think my time is about to be expired. This is your rebuttal time, so if you'd like to save a little bit, that would be fine. Thank you, Your Honor. You're welcome. Mr. Peldyak. Thank you, Your Honor. May I begin, Your Honor?  Good morning, Your Honors. May it please the Court. I represent the separate appellant in this case, Theresa Dufour on France, who is the former wife of Dr. Gary France. And the issue with respect to her is whether or not the government can seize and take all of the monthly proceeds from the disability insurance policy that was currently being paid to Dr. France. So the first question is why she has standing here to complain about the disposition of this insurance policy. Well, I believe she has standing, Your Honor, because it affects an interest that she has in the policy, an interest that was awarded to her by a bankruptcy trustee in a settlement of a divorce case. And that interest is intended to be used for child support. And I think the But that's at least a third-party interest, and I gather that the minor is now not a minor anymore. That's true, Your Honor, but the divorce decree was entered, and I think that is not a relevant consideration. The restitution order was already in place at the time the divorce decree was entered, wasn't it? That's correct, Your Honor. However Isn't that a prior lien then? It normally would be, except for the fact that Dr. Gary France is our position that he had no interest in that acts of policy at the time the restitution judgment was entered on July 22nd of 2002, or at the time they recorded their interest in California in September 24th of 2002. And the reason is because of Section 541A of the Bankruptcy Code. Dr. France filed bankruptcy long before the criminal case was filed against him. When he filed bankruptcy on January 5th of 2000, the bankruptcy trustee took all the legal and equitable title to all of the doctor's property, whether he's disclosed that property or not. It just seems like a windfall to me because the bankruptcy fraud is not listing this particular policy, right? Or that's part of this. Well, that was part of the allegation. I believe it was in Count 7 of the second superseding indictment that that was listed. However, the attachment of the interest of the bankruptcy Because he didn't list it, this restitution lien can't take effect. That just doesn't seem right. Well, here's one of the fundamental problems with that argument. Restitution liens, like a small set of other things, are non-dischargeable in bankruptcy. So it means they continue throughout the bankruptcy. It's still a debt. But according to your logic, all you have to do is file for bankruptcy. All of your property magically converts into property of the bankruptcy estate, and the lien goes up in smoke. And that seems to me completely inconsistent with the Bankruptcy Code. And not only that, but you say there's no interest. But there's actually a future interest in the bankruptcy estate. Whatever's left over after the bankruptcy has been administered, and after dischargeability and priorities and all the rest have been decided, reverts back to the person who filed for bankruptcy. So it's not no interest. I think that's, and on top of all of that, the government's entitled with restitution to trace the flow of assets. It does that all the time in criminal restitution. Well, Your Honor, it looks like under the Bankruptcy Code and the way the Bankruptcy Code is set up, the trustee takes legal equitable title for the purpose of administering those assets during the time the bankruptcy case proceeds. Under 543 of the Bankruptcy Code, the trustee then abandons or releases back whatever interest he does not administer during the term of the bankruptcy proceeding. Under Bankruptcy Rule 9019, he's authorized to settle a case. In this case, he settled a child support conflicting claim to those policy proceeds. But he's not entitled to override the government's priority for criminal restitution. Assuming, Your Honor, that that priority attached at the time. As Judge Tinder points out, if it's a non-dischargeable debt, there's no way that it escaped the bankruptcy. Just like student loans or child support obligations or other things. There are a small number of things, criminal fines, that you can't just file a bankruptcy and erase. And your theory is that that's precisely what can happen. Well, Your Honor, it's treated as a... As long as the trustee's willing to play ball. If I may say so, Your Honor, it's treated as if it were the same as a tax lien. And in the 1965 Spears case from the U.S. Supreme Court, it says a prior unperfected tax lien that is not perfected at the time the bankruptcy filing arises does not trump the bankruptcy. And if it does not trump the bankruptcy, then the bankruptcy trustee has the authority to settle that estate, to allocate any of the property that is in the trustee's possession that he has the authority to settle, which he did. In fact, in the plea agreement, I believe this claim was released. It was released to the bankruptcy trustee to carry out an adversary proceeding, which the bankruptcy trustee did, to settle the issue with respect to the bankruptcy fraud. As you recall, Your Honor, that the $800,000 in restitution was allocated only to the Medicaid portion of the plea agreement and came as a surprise to Dr. France. He thought it was allocated to everything, and he found out that it was not. And because of that, they released the authority to the bankruptcy trustee, I think in a best-case scenario of looking at what happened in the plea agreement itself and the language of the plea agreement does not preclude the bankruptcy trustee from allocating and from adjudicating the interest. So you think the bankruptcy trustee can override the government's priority to have a criminal restitution order satisfied? Well, Your Honor, I think the question is did that priority... No, yes or no? The bankruptcy trustee can override... I don't think it's a question of overriding the authority. Well, yes, it is because you're saying that because of the things that the bankruptcy trustee did, the government is not able to reach the proceeds of this policy, in part because your client has this indirect interest through the now, maybe in college, whatever, the now not minor child. Well, I believe that the bankruptcy trustee is given the authority by the bankruptcy code, which is federal law, Your Honor, and I think you follow federal law, and that does trump, in this case, under these circumstances, the lien as to Ms. France only. Right, I mean, you raise an interesting question, because what we really have to do is reconcile two different provisions of federal law, the bankruptcy provision in 3613, et cetera. And I think as far as the standing issue is concerned, Your Honor, I think the lower court conceded that Ms. France does have, or Ms. Dupont does have... The lower court can concede all they want, but we have to make that decision ourselves. Okay, Your Honor, unless the court has any further questions, I think I've concluded. Thank you. Okay, thank you very much. Mr. Stewart. May it please the Court. Counsel for Ms. France, counsel for Mr. Perrone. Your Honor, this case represents a contest between two parties over who will reap the benefit of a $16,000 a month private contract disability insurance. So I have one question for you, at least one, Mr. Stewart, which is why after France files his bankruptcy proceeding, which he does in January of 2000, the government didn't throw into the hopper a claim into the bankruptcy proceeding for this restitution judgment. The judgment comes along while the bankruptcy is proceeding. It's a couple years later, 2002. The lien's recorded in the L.A. County, September 2002. What's the harm of bringing before the bankruptcy court the fact, in a formal way, that the government has this lien for the collection of the restitution judgment? Well, Your Honor, I think we need to clarify the facts. And the facts here are that the bankruptcy was filed in 2000. January 5, 2000. Right. And this case wasn't filed until the year 2002. I understand that, but the bankruptcy isn't finished until long after you perfect the lien by the filing. And you can certainly go to the bankruptcy court while a bankruptcy is proceeding and furnish relevant information to the court. Well, our claim represented a post-petition claim, Your Honor, not a pre-petition one. And, again, as you pointed out, our claim is non-dischargeable in bankruptcy, both under the bankruptcy code itself and under 3613. So your position would be that it's a post-petition personal claim against Dr. France. And, as such, it can be enforced against any asset that exists after the bankruptcy is over. That's correct, Your Honor. But why are the assets then not reduced by the, let's say, the resolution of this combined divorce and interpleader and all the rest of those things? Well, you know, as it was alluded to by counsel for Ms. DiPero, is that the restitution in this case only included the amounts that were due on the first count of conviction. Right, I understand, the Medicaid. Right, to the city and to the CTA. Why does that matter to the question that I've just asked? Why isn't the package of assets that your post-petition claim can operate against whatever is left over after the bankruptcy court resolves the disposition of the bankruptcy estate itself? Is it because you see the monthly payments as just an ongoing income stream unaffected by the bankruptcy court, or what? Well, that's true, Your Honor. Our lien rights attach both to the contract rights itself that Dr. Franz possesses, and then the right to payment each month. So, in effect, that monthly payment represents a new species of property to which our lien is attaching. So, but you have to be able to convince us that it's about $17,000 a month, right? That's right. Give or take. You have to convince us that that is the correct amount to look at, and whatever order the bankruptcy court issued didn't, if you will, encumber part of that $17,000 a month going forward. For at least, you know, in the case of the minor child, until 2019, as I understand. Right. You know, Your Honor, I think it's important to point out that, first of all, that this argument about our lien not attaching was brought up in the most tangential way in the record below. And there was no real argument about facts or about whether this was actually happening. It was a theory. It was an intermediate theory in Mr. Perrone's argument that the government was a stop from challenging her right, a stop because of all that litigation that was going on in California, which we had no notice of. This was the theory, which I actually have no use for, that the U.S. Attorney's Office is the same as the U.S. Trustee. Right. Right. And, Your Honor, if you'll look at the briefs, those are the arguments that were addressed by the government. That was the argument that was addressed by Judge Norville. This whole theory that our lien never attached was really never pressed in any sort of substantive way. Well, now that it's here, what do you have to say about it? Well, what I would say is, first of all, is this, is that one of the exceptions to the automatic state of bankruptcy is that a criminal case would continue on to its resolution, whatever that may be. And under 3613, the statute that will solve this case in the end, says that our lien arises from that criminal judgment upon its entry. And you interpret that to mean not just criminal cases that are pending at the time the bankruptcy is filed, but also criminal cases that are instituted during the course. That exception to the automatic state is, you know, for all criminal cases, regardless of when they're brought, pre- or post-petition. And in that regard, then you look back to 3613, and it says our lien arises upon the entry of judgment. It doesn't say unless there's a bankruptcy pending. And, indeed, the notwithstanding language of 3613 says notwithstanding any federal law, any federal law. And there was a six-figure case that we cited in our brief, the Robinson case, where they addressed this issue. And they were quite expansive in their interpretation of 3613 and how it overrides. So don't we need to reconcile, though, the Consumer Credit Protection Act with 3613? Because one possibility, it seems to me, is that Congress actually did mean to include substitutes for earnings, which would not mean that they were totally exempt. But using the Consumer Credit Protection Act, you'd only be able to collect 25 percent. So it's an intermediate solution. So why doesn't that reading make some sense? Thank you, Your Honor. I think the thing of it here is that 3613 in its present form came about through the MVRA in 1996. Sections A1, 2, and 3 were passed at one time and should be looked at comprehensively. As you already pointed out, A1 incorporates from Title 26 a limited number of exemptions to enforcement. Section 2 says you can't use any, basically, from Title 28 you can't use any of the exemptions you would ordinarily use for a civil judgment. And then Section 3, Subsection 3, addresses earnings. Now, in Subsection 1, those exemptions that are taken from the tax code, they deal there with disability. And disability is commonly understood as income for not working. Subsection 3 deals with earnings, which is commonly understood as income for working. Those are two different things. If you further look at Subsection 1, the disability that it deals with is nothing like a private contract for disability insurance. But you're not, I mean, I was concerned with the district court's reasoning that these payments weren't a benefit of employment because he was self-employed, because he privately purchased it. That all seemed to me to be beside the point. Well, Your Honor, first of all, this whole issue of whether Frans was self-employed or anything, that's something that really was not explored below. So you're not relying on the district court's reasoning at this point? No. You're making this statutory argument? When the district court addressed these issues, he addressed it in this context, is that we came and we said Ashcraft, which is the 8th Circuit case that talked about drugs, which we think is thoroughly bad law. No, you're essentially asking us to circulate, and if we were to rule for you, we would have to create a conflict in the circuits, would we not? Most definitely, Your Honor. And what we said was even if you accept Ashcraft as good law, look at the facts. We could distinguish the facts, and the facts in Ashcraft were that you had somebody who was an employee and obtained insurance or disability from their employer. And the presumption would be that if they went from being disabled to being healthy and could work again, then they would go back to work. But that's not the case with Dr. Frans. This was, you know, he's a self-employed, despite all the corporate things he would like to say, how his business is structured, he's basically a self-employed dentist. That's what's set forth in the plea. And he bought this contract of insurance, and it was more like business loss insurance rather than unemployment insurance or something else like that. So this is limited to his work as a dentist, right? This isn't a broader form of disability. That's right. And again, Your Honor, in the record, he broke a bone in his hand. Other than that, the man is able-bodied, he's intelligent, he taught. At the time he was sentenced, he was actually teaching at UCLA. You know, I always would emphasize, too, that this whole issue of private contract disability insurance was addressed before Congress incorporated the task code provisions into 3613. There was a second case that we relied upon called Freed in our brief, where they addressed this issue completely, and they said, no, the lien for taxes attaches to that policy, and no, it's not among the exemptions that are listed, broader exemptions that are listed in the tax code. And here we're dealing with a more limited set of exemptions. And there you have to, I think, also keep in mind that in incorporating those exemptions from the tax code to the criminal code, one of the things that Congress didn't carry over was Social Security disability. Yeah. So somebody who's getting Social Security disability, that money is subject to offsets, subject to garnishment. Why shouldn't the same be true to something that's not even listed, where Social Security was deliberately not included in Congress? So what about, since time is short, Ms. Duperon's assertions of the right to get payments for the child support, pursuant to this global settlement that they reached? A couple things, Your Honor. First of all, her rights were not created by the bankruptcy trustee. Her rights were created in a dissolution agreement, a sweetheart deal that she had with Dr. France. It was a California court order, right? Well, sure, but it was crafted by them and then incorporated into the dissolution decree. The sweetheart may be a little strong. Yeah, nothing wrong with that. I mean, we don't want to have only the most contentious divorce decrees in force. I think, Your Honor, when Gary France, in 2003, owes $300,000 to the bankruptcy trustee and owes $800,000 to the government, $1.1 million, and yet promises almost 50% of his income to his soon-to-be ex-wife, I think that that is questionable. Well, you can say maybe he wasn't negotiating hard since he wasn't going to see it anyway. It was either going to go to the government or it was going to go to the ex-wife. Right. Nonetheless, as a formal matter, it's a decree of the California court, right? Right, that we were not a part of. Supervising the marital dissolution. That we were not a part of. Yeah. And so I think that the, you know, if you cut to the chase, his, you know, Theresa de Peron's rights stem from that dissolution agreement and the dissolution judgment. And she basically got an assignment from Gary France, an assignment at a time when our lien encumbered that private contract of disability insurance. So that assignment certainly does post-date your perfectionist lien in Los Angeles. It certainly does. And so, you know, this is the purpose of liens. The purpose of liens is to follow property. And so that property that was assigned from Dr. France to Theresa de Peron was encumbered with the government's liens. So essentially you're saying you can unwind the assignment, basically, is what you're arguing. Either unwind it, but if nothing else, at this point in time in 2013 or 2014, when we moved to assert our lien rights against that stream of payments, you know, Judge Norgal was correct in saying the government's rights are superior in this case. Simple as that. So this money is now being paid into the court. Is that correct? That's correct, Your Honor. You know, over the 10 or 11 years that Dr. France was supposedly paying on this judgment, it was $10,000 recovered. In the past 14 months, we've recovered almost a quarter of a million dollars. This money is sitting in the court. Right. So in another few years, if you keep collecting, I guess you'll actually get the money. $80,000? $800,000. $800,000. It will be paid in about three to four years if this court upholds the garnishment order, yes. So I think that a couple of other things I just want to address, just to make sure that we don't lose sight of some things. First of all, in Dr. France's reply brief, he makes quite a point of saying that the government conveniently left out 6334A9, which is a part of the tax code that wasn't incorporated into the criminal code. Right. We didn't leave anything out. It was Congress that left that out. They left it out from 3613. It's not one of the exemptions that are used. Congress instead decided to rely on the Consumer Credit Protection Act for the definition of earnings and what would be exempt and what would not be exempt. So I think that there was nothing that was left out there. And finally, with regard to Mr. Dupron, I would simply say this, is that this whole theory of our lien not attaching was just that, a theory. It was never developed in the district court. It was nothing that the district court even paid attention to. So there's nothing to overrule or anything like that. It's just something that the parties never really paid that much attention to. Unless the court has any further questions, we respectfully ask that you affirm the district court's ruling. All right. Thank you very much. So anything further, Mr. Dupron? Thank you, Your Honor. If I may, I would like to finish my answer regarding your question on the statutory interpretation of Section 3613 AC, A1 and A2 and A3. If the government argument is accepted that A1 is the exclusive list, we also have A2 and A3 incorporated in Section 3613. That would make the subsections irrelevant in terms of the exemption provided under Section A3. And that would be the answer to that, Your Honor. And in terms of the order, I'd like to follow up with or point it out to the court that on page 9 of the order of the district court, it says that the facts of the case was misstated. ASCAP did not receive her disability payment directly from the employer. And according to the order, it says because of that, the payments are earnings under the Consumer Credit Protection Act. That's not ASCAP. ASCAP received her disability payment directly from the insurance company long after she had stopped working because of disability. On page 9 of the order, the district court says my client is self-employed. That's not correct. My client has a business incorporated. He did not obtain privately the disability policy. Rather, he obtained the policy through his business. And on the last point that I'd like to make is the public policy consideration of the ruling by the district court. The Consumer Credit Protection Act does not distinguish two classes, one who is employed, work for someone else, obtain the same kind of policy, and then they would be protected under the Consumer Credit Protection Act. On the other hand, if you are self-employed, have your own business, whether you incorporate a business or do not incorporate a business, and you obtain the same kind of policy as in ASCAP, those individuals would not be protected under the Consumer Credit Protection Act. And for that reason, the district court was wrong. It was inconsistent with United Way's discipline, and this court held that monthly payment from a retirement account which is not incorporated in Section 3613, are ordinance under the Consumer Credit Protection Act. Thank you. Okay. Thank you very much. Thanks to all counsel. Oh, do you have anything further, Mr. Peltiek? I can't remember if you saved any time. If I may. Certainly. First, I did do a bad job in explaining the standing argument. I think the GMAC v. Bates, it's in the record, is a good case. I think if we don't allow Mrs. Duperon standing, that really kind of flirts with denying her her Fifth Amendment rights to due process and being deprived of a property right, which was vested in her because she was getting those payments. Secondly, Your Honor, we're only asking this court to cut out from the policy that portion of the payment, the monthly payment that is going to Mrs. Duperon, and that was done under the authority of 541A of the Bankruptcy Act, the authority vested in the trustee under 1919 of the bankruptcy rules. And, Your Honor, I see my time looks like it is. No, you have a minute or so. Okay. And furthermore, I think the other thing to note is that the U.S. Attorney Office appears to have released the claim for the settling the bankruptcy fraud and the adversary proceeding in the plea agreement itself in the third paragraph, in which it says, Nothing therein shall waive or limit or release any administrative or judicial civil claim by the United States or any of its agencies. The U.S. Trustee's Office is an agency of the United States, part of the Department of Justice, as is the U.S. Attorney. And I think in that case that this court is going to be faced with a decision of statutory interpretation of policy. Thank you. All right. Thank you. Now, I will say thanks to all counsel, and we will take the case under advisement.